116 N.J. Super. 487 (1971)
282 A.2d 784
JAMES LAWSON, PLAINTIFF-APPELLANT,
v.
STANLEY A. DAVIS, CLERK OF ELECTIONS FOR THE COUNTY OF MONMOUTH, AND WILLIAM A. RALPH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1971.
Decided October 18, 1971.
Opinion filed October 21, 1971.
*488 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Alexander D. Lehrer argued the cause for appellant (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys).
Mr. Benedict R. Nicosia argued the cause for respondent William A. Ralph (Messrs. Doremus, Russell, Fasano & Nicosia, attorneys).
PER CURIAM.
Plaintiff, a citizen of Keyport, challenges the validity of a petition for the direct nomination of William A. Ralph as an Independent Party candidate for mayor of Keyport at the forthcoming general election. The Law Division judge held the petition valid and refused plaintiff's demand for the removal of the candidate's name from the ballot.
*489 The petition contained 270 purported signatures, as against a legal minimum requirement of 49. It was established at the hearing that some 32 of the signatures were of persons not registered voters, or were not genuine or were otherwise questionable, leaving some 238 unquestionably qualified signatures.
The gravamen of plaintiff's position is that there was a violation of the requirement of N.J.S.A. 19:13-7 that at least five of the signatories on a nominating petition make an affidavit that they saw all the signatures made thereto and believe the signers to be qualified voters. The argument is that this failure voids the petition and renders it of no effect whatever.
Both sides concede that the requisite number of affiants, as a result of the recent decision in In re Smith v. Hayes, 59 N.J. 236 (1971), is one, not five. The petition contained 15 sheets with varying numbers of signatures on each. Plaintiff argues that the proofs show that the original affidavit on the petition, purporting to contain the oath of five signers that they saw all 270 persons sign, is untrue. This is a justified assertion on this record. After the making of the order to show cause respondent Ralph sought to remedy this defect by producing a corrective affidavit by 16 signatories to the effect that all of them saw all 270 sign. We doubt that any of the signatories literally intended to be making such an oath. In any event, the proofs demonstrate and respondent concedes that this affidavit is also not literally true.
Indeed, on the basis of the proofs, it is impossible to say with assurance that any particular signatory witnessed the signatures of any particular group of others. We believe the statute, properly construed (giving effect also to In re Smith, supra) means that each petition (or sheet if separately circulated) should contain an affidavit or affidavits clearly signifying which signatory has witnessed what signatures of any of the others, and that every signature should be specifically verified by the affidavit of at least one of the other signers who witnessed it. See In re Petition of Job, *490 111 N.J. Super. 170 (App. Div. 1970), certif. den. 57 N.J. 124 (1970).
However, we do not find the intent or purpose of the candidate or the carriers of the petition (or sheets) in this situation to have been fraudulent, as was the case in McCaskey v. Kirchoff, 56 N.J. Super. 178 (App. Div. 1959). True, the making of the verifications was patently careless and inattentive to the statutory requirements, and so was the procurement of some of the signatures. But there seems to be no good reason to frustrate the expressed desire of more than four times the necessary statutory minimum of Keyport citizens to have Ralph run as an Independent Party candidate for mayor. Here the underlying purpose of the verification procedure was attained, i.e., assurance of the genuineness and qualifications of a sufficient number of signatories, by the independent check of the signatures made pending these proceedings by the election clerk's office, testified to in the Law Division and found credible by the trial judge. While we do not at all condone the failure faithfully to follow the statutory verification procedure, and particularly the procurement of the untrue "corrective" affidavit, nevertheless where far more than the requisite number of qualified signatories have in fact signed a petition, deficiencies not of a fraudulent character in the verification should not have the disenfranchising consequence of destroying the petition and striking the candidate's name from the ballot. See Wene v. Meyner, 13 N.J. 185, 193, 196 (1953); Kilmurray v. Gilfert, 10 N.J. 435 (1952). As stated in Kilmurray
Election laws are to be liberally construed so as to effectuate their purpose, Carson v. Scully, 89 N.J.L. 458, 465 (Sup. Ct. 1916), affirmed, 90 N.J.L. 295 (E. & A. 1917). They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons, In re Stoebling, 16 N.J. Misc. 34 (Cir. Ct. 1938); Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951). [at 440]
Affirmed.