510 A.2d 810

**David BURNS and Diane Burns, H/W**

**v.**

**PEPSI–COLA METROPOLITAN BOTTLING COMPANY and Pepsico, Inc. and Pepsi-Cola Metropolitan Bottling Group, Inc. and Kenneth L. Bello, T/A K.L. Bello Mobile Lunch Service.**

**Appeal of PEPSI–COLA METROPOLITAN BOTTLING COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1986.

Filed June 9, 1986.

---

**3.** We find it unnecessary to address the fifth issue raised by appellant because of our resolution of this case.

572

Charles J. Bogdanoff, Philadelphia, for appellant.

Steven E. Wolfe, Holland, for Burns, appellees.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WICKERSHAM, Judge:

Pepsi-Cola Metropolitan Bottling Company appeals from the judgment entered against it and in favor of appellees, David and Diane Burns, by the Court of Common Pleas of Bucks County.

Appellee David Burns ingested glass particles contained in a bottle of Pepsi-Cola soft drink purchased from a lunch

truck at his place of work on June 22, 1981. Appellee was hospitalized on several occasions subsequent to this incident because of medical problems which developed from the passage of the glass particles through his digestive system, including gastrointestinal pain and rectal bleeding. He was later treated by a psychologist for symptoms of post-traumatic stress disorder.

Appellees instituted the instant action seeking recovery for the physical and psychological injuries sustained by David arising from the glass ingestion incident and for Diane's loss of consortium. The jury awarded damages to David Burns in the amount of $8,662.35 for medical expenses, $644.00 for lost wages, and $15,000.00 for pain and suffering. Diane Burns received $15,000.00 for loss of consortium.

Appellant timely filed this appeal to our court. It presents five issues [1] for appellate review. After a thorough review of the record, the briefs of the parties and the pertinent caselaw, we conclude that appellant's issues three, four, and five have been succinctly and accurately addressed by Judge Leonard B. Sokolove in his opinion dated

---

1. Those issues are as follows:
   1. Is a new trial or remittitur mandated where the trial court erroneously held that evidence of a spouse's heroin addiction and extra marital affair was not relevant to the parties' loss of consortium claims?
   2. Did the trial court commit reversible error when it failed to charge the jury concerning willful falsehood when the plaintiff-husband's lack of veracity was demonstrated to the jury on more than one occasion?
   3. Did the trial court commit reversible error when it refused defendant's requested instructions that the jury be told they should not allow sympathy to enter into their deliberations?
   4. Did the trial court commit prejudicial error when it limited the scope of the defendant's cross-examination, made inconsistent evidentiary rulings and refused to allow defendant to cross-examine the plaintiff's expert concerning medical records he earlier testified that he relied on in forming his opinion?
   5. Is a new trial mandated where the trial court erroneously charged the jury concerning damages for future pain and suffering when no evidence was presented to support such a charge?
   Brief for Appellant at 3.

June 11, 1985, and require no further elaboration here. We therefore address only appellant's remaining issues below.

Initially, we turn to appellant's first issue. Appellant here argues that a new trial or remittitur is warranted because the trial court improperly excluded evidence of appellee Diane Burns' heroin addiction and an alleged extra-marital affair as not relevant to her loss of consortium claim. In the alternative, appellant contends that the lower court abused its discretion in refusing to award a new trial or remittitur below, in light of an excessive jury award for Diane's loss of consortium. We cannot, however, discern any merit in either argument.

First, with regard to appellant's primary argument regarding the exclusion of evidence of Diane Burns' drug use and alleged extra-marital affair, we must agree with the trial court that this evidence was irrelevant to disproving appellee's loss of consortium claim.

In this Commonwealth, loss of consortium has been recognized as a

> right growing out of the marriage relationship which the husband and wife have respectively to the society, companionship and affection of each other in their life together. As thus defined and limited, any interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference.

*Leo v. Bottman,* 40 Wash. Co. 105, 108–09 (Pa.1960). The right to recover for loss of consortium springs from the English common law and once extended solely to a husband's recovery for the loss of service rendered to him by his wife. That right was later expanded in this country to include a wife's recovery for the loss of services rendered by her husband. Pennsylvania law originally followed the common law rule, but acknowledged a wife's right to recover damages for the loss of her injured husband's services under a loss of consortium theory in *Hopkins v. Blanco,* 224 Pa.Super. 116, 302 A.2d 855 (1973), *aff'd,* 457 Pa. 90, 320 A.2d 139 (1974). Under *Hopkins,* those services which

may be compensated for in damages by either spouse are: "whatever of aid, assistance, comfort, and society [one spouse] would be expected to render or bestow upon [the other], under the circumstances and in the condition in which they may be placed." Id., 224 Pa.Superior Ct. at 117, 302 A.2d at 856.

It is clear from the above, that a consortium claim is grounded on the loss of a spouse's services after injury. In calculating the extent of the deprivation to the spouse claiming loss of consortium and disruption to the family life caused by the loss of those services normally performed by the injured spouse, certainly the parties' interpersonal relationships and the state of their marriage immediately before the injury is helpful in calculating any loss sustained after it, and is therefore relevant. In the instant case, however, Diane Burns' earlier drug dependency, which was no longer a source of tension in the marriage, was not relevant to the issue of what services she lost from David after his injury. As found by the trial judge, inferences that Diane Burns engaged in drug use would go only toward proving her character, which was not a concern in determining what loss of consortium she suffered.

Similarly, Diane Burns' alleged 1978 extra-marital affair was irrelevant as too remote in time to David's injury to possibly prove that marital problems existed immediately before the glass ingestion incident. The alleged "affair" was based on David Burns' statement contained in Eugenia Hospital records that he had found his wife in bed with another man on a single occasion fully three years before his injury. Since appellant could not show how this alleged incident, significantly removed in time from the date of David Burns' injury, would possibly diminish Diane's loss of his services, we do not believe the trial judge improperly excluded that evidence. Nor do we accept appellant's "back-door" argument that evidence of the alleged indiscretion should have been admitted for the limited purpose of

impeachment.[2] We therefore find appellant's primary argument in support of its first issue to be wholly without merit.

We are also compelled to dismiss its alternative argument that the jury's verdict for loss of consortium was excessive. In evaluating an argument that a verdict is excessive, it is clear that each case is to be decided accordingly to its unique facts and circumstances. *Fretts v. Pavetti,* 282 Pa.Super. 166, 422 A.2d 881 (1980). Moreover, the granting or denial of a new trial on this ground is within the discretion of the trial court and will not be reversed, absent a clear abuse of discretion. *Thompson v. Anthony Crane Rental, Inc.,* 325 Pa.Super. 386, 473 A.2d 120 (1984). Our court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Bortner v. Gladfelter,* 302 Pa.Super. 492, 448 A.2d 1386 (1982). Only if that standard is met may we substitute our judgment for that of the jury which heard and evaluated all the evidence at trial, and that of the trial judge who reviewed the size of the verdict. *See Krupa by Krupa v. Williams,* 316 Pa.Super. 408, 463 A.2d 429 (1983).

Being mindful of these guidelines, we can find no grounds for the grant of a new trial or remittitur based upon the verdict rendered in the instant case. Consortium is an element of damages which has no market value and the amount to be awarded for its loss is particularly for the common sense and sound judgment of the jury. *See Mueller v. Brandon,* 282 Pa.Super. 37, 422 A.2d 664 (1980). In determining whether the jury's award is shocking in this case, we look at its unique facts and review the extent of deprivation to Diane Burns and the disruption to the Burns' family life caused by the loss of those services performed

---

**2.** David Burns' statement that he had found his wife in bed with another man in an isolated incident did not actually conflict with his later statement at trial that he only "assumed" his wife was having a continuing extra-marital affair with "somebody else." N.T. 96, 9/22/83. Moreover, the truth or falsity of the former statement, as noted by the trial court, "would be extremely difficult to ascertain." Lower ct. op. at 13.

by David. *See Reuter v. United States*, 534 F.Supp. 731 (W.D.Pa.1982) (applying Pennsylvania law).

In the instant case, appellee David Burns presented compelling testimony as to the severe negative effects the glass ingestion incident had upon his marriage. He testified to the changes which occurred in the couple's previously happy marital relationship because of his mood swings, idiosyncratic eating habits, and refusal to have sexual relations with Diane for a year after the incident. N.T. 97–103, 9/22/83. He further testified to the significant disruption his condition caused with regard to his inability to assist Diane with co-parenting their young child. N.T. 99–100, 9/22/83.

Appellant argues that appellee Diane Burns' recovery was nonetheless unsupported by the evidence since she did not testify at trial.[3] Appellant, however, does not cite any authority to support this assertion and our own research has not revealed any legal precedent to that effect in this jurisdiction. While it is true that in most cases the spouse seeking damages for loss of consortium has in fact testified, there is no language in any of those cases which we have reviewed which mandates that he or she do so. *See, e.g., Griffin v. Ensign*, 234 F.2d 307 (3d Cir.1956); *Monaghan v. Uiterwyk Lines Ltd.*, 607 F.Supp. 1020 (E.D.Pa.1985); *Reuter v. United States, supra; Barnes v. United States*, 516 F.Supp. 1376 (W.D.Pa.1981), *aff'd in part*, 678 F.2d 10 (3d Cir.1982), *aff'd*, 685 F.2d 66 (3d Cir.1982); *Karle v. National Fuel Gas Distribution Corp.*, 448 F.Supp. 753 (W.D.Pa. 1978); *DeMarines v. KLM Royal Dutch Airlines*, 433 F.Supp. 1047 (E.D.Pa.1977), *rev'd on other grounds*, 580 F.2d 1193 (3d Cir.1978); *Brown v. Philadelphia Transportation Co.*, 437 Pa. 348, 263 A.2d 423 (1970); *Thompson v. Anthony Crane Rental, Inc., supra; Daley v. John Wanamaker, Inc.*, 317 Pa.Super. 348, 464 A.2d 355 (1983); *Hopkins v. Blanco, supra.*

3. Diane Burns was apparently scheduled to testify as a fact witness, *see* N.T. 153, 9/27/83, but was not called.

▆ Furthermore, this court has permitted a verdict for loss of consortium to stand, absent the testimony of the wife-claimant in *Thompson v. Anthony Crane Rental, Inc., supra,* where the jury awarded $150,000 to the wife for loss of consortium, apparently based only on the testimony of her husband and their daughter. *Id.* 325 Pa.Super. at 400, 473 A.2d at 127. Finding no requirement that the spouse seeking to recover for loss of consortium must testify to support such a claim if it is otherwise borne out by substantial evidence from other sources, in light of the record in this case, we can perceive no abuse of discretion in the lower court's denial of a new trial or remittitur.

We now turn to appellant's second issue regarding the lower court's failure to instruct the jury with the requested maxim "falsus in uno, falsus in omnibus," i.e., if a witness fully and corruptly swears falsely to any material fact in a case, the jury may disregard all of that witness' testimony. *See Luckenbach v. Egan,* 418 Pa. 221, 210 A.2d 264 (1965); *Commonwealth v. Levenson,* 282 Pa.Super. 406, 422 A.2d 1355 (1980). Such an instruction has been criticized in the following terms:

It may be said, once for all, that the maxim is in itself worthless;—first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also a practice pernicious, first because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves.

Wigmore, Evidence § 1009 at 982 (Chadbourn rev.1970) (footnotes omitted).

*Commonwealth v. Levenson,* 282 Pa.Super. at 415–16, 422 A.2d at 1360.

The propriety and necessity of giving the instruction has been repeatedly questioned by our court in criminal cases. *See, e.g., Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984); *Commonwealth v. Carey,* 293 Pa.Super. 359, 439 A.2d 151 (1981); *Commonwealth v. Levenson, supra; Commonwealth v. Parente,* 184 Pa.Super. 125, 133 A.2d 561 (1957), *aff'd,* 392 Pa. 48, 139 A.2d 924 (1958). In *Commonwealth v. Parente, id.,* 184 Pa.Superior Ct. at 132, 133 A.2d at 564, our court stated:

> The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts, so that what remains might be stated thus: When a fact finding body concludes that a witness has deliberately falsified in his testimony on a material point this should be taken into consideration, along with many other tests, in determining what credence should be given to the balance of his testimony.

*See also Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1968); Subcommittee Note, Proposed Pa. Stand. Jury Instructions Criminal § 4.15 (Subcommittee Draft, Dec. 18, 1972) (continuing validity of charge in doubt).

■ In the instant case, the trial court could properly find that the instruction was irrelevant, *see* Lower ct. op. at 15, because there was no indication of deliberate falsehood by any of appellees' witnesses. *See Commonwealth v. Maute, supra.* Before the maxim is applicable, the falsehood must be "wilful and corrupt" rather than mere contradiction or self-contradiction. *See Commonwealth v. Parente, supra,* 184 Pa.Super at 131, 133 A.2d at 564. After careful examination of the testimony cited to us by appellant, we do not believe that any testimony has been indicated which would warrant the instruction under this standard.

Whether the jury should be instructed on a given point of law depends upon the facts and the issues in the case, *Ferrick Excavating and Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 484 A.2d 744 (1984), and only issues which are relevant to the pleadings and proof may become the subject of jury instructions. *Perigo v. Deegan,* 288 Pa.Su-

per. 93, 431 A.2d 303 (1981). A point for charge which is not precisely applicable to facts in the case may be properly excluded. *Holland v. Zelnick,* 329 Pa.Super. 469, 478 A.2d 885 (1984). Having reviewed the jury charge concerning credibility, N.T. 18–19, 9/30/83, we find that the trial court did not err in refusing to give appellant's instruction, and adequately instructed the jury with regard to witness credibility. *See Commonwealth v. Maute, supra.*

Therefore, for the reasons enumerated above, the judgment of the lower court is affirmed.

The judgment is affirmed.